UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-3892 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CORTLAND CAPITAL MARKET SERVICES, LLC, ALTER DOMUS INC., and ALTER DOMUS PARTICIPATIONS S.À.R.L., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Paul Woods lost his job as a financial executive at Cortland Capital Market Services, LLC. He believes that the company terminated him because of his age, not his performance. So he sued.

Woods didn't simply sue Cortland Capital, his employer. He also brought claims against its parent company, Alter Domus, Inc., which is based in Illinois. But Woods didn't stop there. He also sued Alter Domus Participations S.à.r.l., the parent company sitting atop the corporate food chain.

Alter Domus Participations is a Luxembourg company, and it believes that it has no business getting sued in Illinois. So Alter Domus Participations moved to dismiss for lack of personal jurisdiction.

For the following reasons, the motion to dismiss for lack of personal jurisdiction is hereby granted.

### **Background**

At the motion-to-dismiss stage, the Court must accept as true the complaint's well-pleaded allegations. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Before diving in, the Court offers one overarching observation. The complaint isn't the easiest to follow when it comes to who's who.

Two of the three Defendants have "Alter Domus" in their name. There's Alter Domus Inc., which the complaint calls "Alter Domus U.S." And then there's Alter Domus Participations S.à.r.l., a company in Luxembourg.

The complaint uses the phrase "Alter Domus" over and over again. That phraseology raises a question: Alter Domus *who*?

Oftentimes, it looks like the complaint is referring to one particular company. *See, e.g.*, Am. Cplt., at ¶ 14 (Dckt. No. 18) ("Alter Domus, headquartered in Luxembourg, provides administrative and compliance services to a global base of clients in the alternative fund investment business.").

But sometimes it is not clear which entity the complaint is referring to. *See, e.g.*, *id.* at ¶ 15 ("One of the most significant such acquisitions occurred in 2018, when Alter Domus acquired Cortland Capital."); *id.* at ¶ 17 ("Alter Domus began recruiting Woods in 2019.").

At times, the complaint seems to use the phrase "Alter Domus" to refer to the broader corporate family. *Id.* at ¶ 7 ("Alter Domus U.S. and Cortland Capital are part of a group of affiliated entities doing business as Alter Domus, which provide services to clients in the alternative investments industry worldwide."); *id.* at ¶ 15 ("In recent years, Alter Domus eagerly sought to expand its North American operations, particularly by acquiring other existing U.S. businesses."). The affiliated companies get whirled together in the corporate blender, creating a cocktail called "Alter Domus."

The blurring and blending of corporate names make things tricky when it comes to personal jurisdiction. The foreign entity, Alter Domus Participations S.à.r.l., contends that it lacks sufficient contacts with this forum. It is hard to tell if Alter Domus Participations S.à.r.l. has a footprint in Illinois when the complaint talks about "Alter Domus." That is, it is tricky to tell who's who and what's what when the complaint does not specify whether it is referring to one entity (and if so, which one), or to the group of affiliated entities.

So this Court will apply the following rule of construction. The Court will read "Alter Domus" to refer to Alter Domus U.S. This Court will not read "Alter Domus" to refer to Alter Domus Participations S.à.r.l., unless the context makes it clear that the complaint is referring to the foreign entity. Woods can file a motion for leave to amend the complaint if he intended something different.

With that windup, the Court dives right in. The Court will pick up where it left off – with the family of Alter Domus companies.

The Alter Domus companies provide services to clients in the alternative investments industry worldwide. *Id.* at ¶ 7. Alter Domus, Inc. ("Alter Domus U.S.") is the American company, and it is based in Illinois. *Id.* at ¶ 5. Its parent company is Alter Domus Participations S.à.r.l. ("Alter Domus Participations"), a societé à responsabilité limitée incorporated in Luxembourg. *Id.* at ¶ 8.

"Alter Domus" (presumably meaning Alter Domus U.S.) is governed by a Group Executive Board, which is in turn overseen by the Supervisory Board of Directors. *Id.* And the Group Executive Board and the Supervisory Board of Directors are both controlled by Alter Domus Participations. *Id.*

In recent years, Alter Domus U.S. sought to expand operations in North America through acquisition. *Id.* at ¶ 15. For present purposes, one of those acquisitions looms large. In 2018, Alter Domus U.S. acquired Cortland Capital. *Id.* The employees gained in that acquisition became the majority of Alter Domus U.S.'s employees in North America. *Id.* at ¶ 16.

"Alter Domus" began recruiting Plaintiff Paul Woods in 2019. *Id.* at ¶ 17. Woods had worked as a financial executive for many years. *Id.* at ¶ 13. Woods believes that Alter Domus sought him out because of his "significant goodwill and industry contacts" and "years of experience in fund operations," which could help Alter Domus achieve its aggressive growth and development targets. *Id.* at ¶ 18.

Woods received an employment offer in May 2020. *See* Am. Cplt., Ex. A, at 2 (Dckt. No. 18). The offer came from Cortland Capital Market Services LLC, "part of the Alter Domus Group." *Id.* at 1. The company offered to hire Woods as the Regional Executive for North America, reporting to the CEO (Doug Hart). *Id.*

Before long, Woods signed an employment agreement with Cortland Capital Market Services LLC, "an affiliate of Alter Domus Inc." *See* Am. Cplt., Ex. B, at 2 (Dckt. No. 18).

Woods started with a base salary of $350,000 per year. *Id.* He was eligible to receive an annual bonus of 50% of his salary, based on revenue benchmarks approved at the beginning of each year by the Board of Directors of Cortland Capital. *Id.* Any annual bonus would need the approval of the Board of Directors of Cortland Capital and the remuneration committee for "the Group," defined as "the Company, its subsidiaries and any holding company or parent entity of the Company and any associated or affiliate company." *Id.*

The agreement addressed the compensation that Woods would receive if the company terminated him without cause. In that scenario, Woods was entitled to receive: "(i) any accrued and unpaid compensation earned by [Woods] on or prior to the date of termination, payable no later than the business day following the date of termination; (ii) payment of any reimbursements owed to [Woods] submitted by [Woods], payable within ten (10) days after the date of termination; and (iii) payment of a pro rata share of any bonus that [Woods] would have earned had he not been terminated until after the conclusion of the applicable bonus period." *Id.* at 5.

Woods soon took charge of the expansion of the North American operations. *See* Am. Cplt., at ¶ 26 (Dckt. No. 18). Under his leadership, "Alter Domus" opened a new office in the Cayman Islands in November 2020. *Id.* at ¶ 27. "Alter Domus" acquired IPS Fund Services, a Boston-based fund administrator, in December 2020. *Id.* at ¶ 29. And in February 2021, "Alter Domus" acquired Strata Fund Solutions, a Utah-based fund administrator. *Id.* at ¶ 30.

3

"Alter Domus" was "thrilled with Woods' efforts in achieving these acquisitions." *Id.* at ¶ 31.

In March 2021, Woods received a letter granting him a second tranche of stock options, giving him the right to purchase shares of Alter Domus Luxembourg. *Id.* at ¶ 35. The letter said that the option was granted by the Board of Managers of Castlelux Two S.à.r.l., a parent company of Alter Domus Participations.[1] *Id.*

A few months later, in July 2021, Alter Domus acquired Investors Economic Assurance, a New York-based company providing technology solutions and services to alternative-investment managers. *Id.* at ¶ 36.

Woods hit the ground running. And then he hit a wall.

In August 2021, Woods received notice of his termination. *Id.* at ¶ 38. He received no reason for his termination. *Id.* He was formally terminated on December 1, 2021. *Id.* at ¶ 41.

Woods believes that the company terminated him because of his age. *Id.* at ¶ 39. He alleges that the company benefitted from his expertise, and then replaced him with individuals who are younger and less qualified. *Id.* at ¶¶ 39–40.

At the end of 2021, "Alter Domus" paid an annual bonus to all of its senior executives, except Woods. *Id.* at ¶ 43. Woods contends that his employment agreement entitled him to receive 11/12ths of his bonus, given that he left the company on December 1, 2021. *Id.* at ¶ 44.

The company did pay him his remaining salary, but did so "late." *Id.* at ¶ 46.

Woods responded by suing Cortland Capital, Alter Domus U.S., and Alter Domus Participations. *Id.* at 1. He brings four claims.

Count I alleges age discrimination in violation of the federal Age Discrimination in Employment Act ("ADEA") and the Massachusetts Fair Employment Practices Act ("MFEPA"). Count II is a breach-of-contract claim. Count III alleges a breach of the implied covenant of good faith and fair dealing. Count IV alleges a violation of the Massachusetts Wage Act.

Alter Domus Participations, the parent company from Luxembourg, moved to dismiss for lack of personal jurisdiction, and for failure to state a claim.

**Legal Standard**

When considering a motion to dismiss for lack of personal jurisdiction, a district court must "read the complaint liberally, in its entirety, and with every inference drawn in" the plaintiff's favor. *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*,

---

[1] According to Alter Domus's annual report from 2022, Castlelux Two is a partial owner of Alter Domus Participations. *See* Alter Domus S.à.r.l., Annual Report and Accounts (2022), https://alterdomus.com/wp-content/uploads/2023/09/AD-Annual-Report-2022.pdf.

440 F.3d 870, 878 (7th Cir. 2006) (citation omitted). Additionally, a district court can consider matters outside of the pleadings. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

A plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.*; *see also Curry Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020). The tie goes to personal jurisdiction.

A district court must hold an evidentiary hearing when personal jurisdiction turns on the resolution of a dispute about material facts. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). But here, none of the parties point to any material facts in dispute. The parties gave this Court no reason to hold an evidentiary hearing, so it won't hold one. *Id.*; *see also Harbor Grand, LLC v. EMCASCO Ins. Co.*, 2022 WL 4079436, at *1 (N.D. Ill. 2022) (declining to hold an evidentiary hearing because there were no material factual disputes); *Urban 8 Danville Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 2020 WL 3058101, at *2 n.4 (N.D. Ill. 2020) (same); *RSK Enters., LLC v. Comcast Spectator, L.P.*, 2018 WL 319318, at *5 (N.D. Ill. 2018) (same).

The party asserting personal jurisdiction – here, Woods – bears the burden of proof. *See Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). When a court resolves a motion to dismiss for lack of personal jurisdiction based on the briefs, without an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Purdue Rsch. Found.*, 338 F.3d at 782 (citation omitted); *see also Hyatt Int'l Corp.*, 302 F.3d at 713.

**Analysis**

Before diving into the arguments, this Court offers a second prefatory note. Alter Domus Participations asks this Court to dismiss the complaint for lack of personal jurisdiction, "with prejudice." *See* Mtn. (Dckt. No. 37).

That's not a thing. If a district court lack personal jurisdiction, then it lacks power over the defendant. And if a court lacks power over a defendant, then it is powerless to do anything with prejudice. *See Lauderdale-El v. Ind. Parole Bd.*, 35 F.4th 572, 576–77 (7th Cir. 2022) ("Dismissals for lack of subject-matter jurisdiction are necessarily without prejudice . . . . The same is true of dismissals for lack of personal jurisdiction.").

A dismissal for lack of personal jurisdiction simply means that a defendant can't be sued here. It says nothing about whether a defendant can be sued somewhere else.

This case involves federal question jurisdiction, so the first question is whether the statute authorizes nationwide service of process. Some statutes do. *See, e.g.*, *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013) (noting that Section 12 of the Clayton Act, 15 U.S.C. § 22, provides for nationwide service of process); *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1021, 1035 (7th Cir. 2000) (noting that 29 U.S.C. § 1132(e)(2) (of ERISA) provides for nationwide service of process); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987) (noting that 18 U.S.C. § 1965(b) (of the RICO

Act) contains an explicit grant of nationwide service); *Fitzsimmons v. Barton*, 589 F.2d 330, 332 (7th Cir. 1979) (noting that Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, authorizes nationwide service of process).

In that situation, contacts with the country as a whole count for personal jurisdiction. *SEC v. Carebourn Capital, LP*, 339 F.R.D. 510, 513 (N.D. Ill. 2021) (Feinerman, J.) ("As for constitutional limits, where . . . a federal statute authorizes nationwide service of process, personal jurisdiction 'is proper, as long as the defendants have adequate contacts with the United States as a whole.'" (quoting *Elite Erectors*, 212 F.3d at 1035)).

If the statute does not authorize nationwide service of process, then a district court may exercise personal jurisdiction over a defendant "only to the extent that a court of general jurisdiction in Illinois could." *Illinois v. Hemi Group LLC*, 622 F.3d 754, 756 (7th Cir. 2010) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

The ADEA does not provide for nationwide service of process. *Swain v. Moltan Co.*, 73 F.3d 711, 720 (7th Cir. 1996). So the question is whether exercising personal jurisdiction would pass muster under the Constitution and Illinois law.

There is no daylight between the Constitution and Illinois law when it comes to personal jurisdiction. Illinois permits the exercise of personal jurisdiction to the extent "permitted by the Illinois Constitution and the Constitution of the United States." *See* 735 ILCS 5/2-209(c). The requirements under the state statute and the Constitution merge. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).

The Due Process Clause permits a court to exercise personal jurisdiction if the defendant has purposefully established "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). These minimum contacts must be sufficient to "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two kinds of personal jurisdiction depending on the level of contacts established: general and specific.

"General jurisdiction is for suits neither arising out of nor related to the defendant's contacts with the State." *GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). A defendant is subject to general jurisdiction when it has "continuous and systematic general business contacts" with the forum state. *uBID*, 623 F.3d at 425–26. These contacts must render the defendant essentially at home in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Specific jurisdiction is for "suit[s] arising out of or related to the defendant's contacts with the forum." *GCIU*, 565 F.3d at 1023. In other words, specific jurisdiction comes from "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "Only intentional contacts by the defendant with the forum jurisdiction can support specific jurisdiction." *Noboa v. Barcelo Corporacion Empresarial, SA*, 812 F.3d 571, 572 (7th Cir. 2016).

The standard for general jurisdiction is "demanding," because the consequences are severe. *uBID*, 623 F.3d at 426. If a defendant is subject to general jurisdiction, it can be sued in that forum for anything and everything. *Id.* From a jurisdictional perspective, if there is general jurisdiction, the defendant is a sitting duck.

"A court has general jurisdiction over a defendant only if he has continuous and systematic connections to the forum state." *Nw. 1 Trucking Inc. v. Haro*, 613 F. Supp. 3d 1081, 1092 (N.D. Ill. 2020) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).

But the relevant test is *not* simply whether a "[defendant]'s in-forum contacts can be said to be *in some sense* 'continuous and systematic.'" *Daimler*, 571 U.S. at 139 (emphasis added). Instead, a defendant is subject to general jurisdiction only when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* (alteration in original) (citing *Goodyear*, 564 U.S. at 919).

General jurisdiction exists where a corporation is at home, and home typically means the place of incorporation and the principal place of business. *Daimler*, 571 U.S. at 137 (citing *Goodyear*, 564 U.S. at 924). The Supreme Court left open the possibility that general jurisdiction might exist in other situations, but it would take an "exceptional case." *Id.* at 139 n.19.

Here, Woods doesn't argue that this Court has general jurisdiction over Alter Domus Participations, separate and apart from its connection to Cortland Capital and Alter Domus U.S. *See* Pl.'s Mem. in Opp. to Mtn. to Dismiss, at 5–6 (Dckt. No. 44). The footprint of Alter Domus Participations in Illinois is not so great that it can stand on its own jurisdictional feet.

Instead, Woods argues that this Court has general jurisdiction over Alter Domus Participations because it has general jurisdiction over Cortland Capital and Alter Domus U.S. There is no debate that this Court has general jurisdiction over Cortland Capital and Alter Domus U.S. After all, they have their principal place of business in Illinois. The only question, then, is whether general jurisdiction over those two entities can give rise to general jurisdiction over the foreign parent company.

Most of the time, personal jurisdiction depends on the contacts that the defendant itself has with the forum. After all, it's called *personal* jurisdiction for a reason.

But there are narrow exceptions. One exception involves piercing the corporate veil. If a domestic entity is merely a sock puppet for a foreign entity, then a court might have jurisdiction over the foreign entity. "Illinois courts exercise jurisdiction over parents based on the activities of the subsidiary where the corporate veil can be pierced." *Central States*, 230 F.3d at 940. But piercing the corporate veil isn't at issue here.

Another exception is an agency theory of jurisdiction, often called the *Maunder* agency theory. That theory is different than the theory about piercing the corporate veil. *See Zimmerman v. JWCF, LP*, 2011 WL 4501412, at *5 (N.D. Ill. 2011) (St. Eve, J.). ("Piercing the veil is a distinct analysis from the *Maunder* agency theory of jurisdiction."); *see also Maunder v.*

7

*DeHavilland Aircraft of Canada, Ltd.*, 466 N.E.2d 217, 223 (Ill. 1984) ("Since we have determined that Inc. was doing business in Illinois, we need not address the *alternative* theory of whether Inc. was the *alter ego* of Ltd." (first emphasis added)).

"The theory underlying *Maunder* is that, if a subsidiary corporation is acting as the parent corporation's Illinois agent in the sense of conducting the parent's business rather than its own, then it is appropriate to assert jurisdiction over the parent." *Alderson v. S. Co.*, 747 N.E.2d 926, 944 (Ill. App. Ct. 2001). But if "the subsidiary is conducting its own business, then an Illinois court may not assert *in personam* jurisdiction over the parent simply because it is the parent." *Id.* (citing *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540–41 (7th Cir. 1998)).

"The very nature of these often difficult issues makes their resolution extremely fact dependent. [In a] number of illustrative cases[,] . . . in personam jurisdiction is . . . denied because the plaintiff has failed to meet its burden of persuasion on the critical issues regarding the relationship between the two corporate entities. On the other hand, if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction[,] . . . then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction." *See* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (4th ed. 2024) (footnotes omitted).[2]

It boils down to whether the subsidiary is merely carrying the parent's water, as opposed to carrying its own. A subsidiary conducts the parent's business rather than its own when "the parent is found to substantially control the subsidiary." *Bray v. Fresenius Medical Care Aktiengesellschaft Inc.*, 2007 WL 7366260, at *6 (N.D. Ill. 2007) (citing *Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 866 (N.D. Ill. 1998)).

Courts in this district look to several factors to determine whether a parent corporation "substantially control[s]" the activities of a subsidiary. The factors include: "(1) whether officers and directors are the same; (2) how much control is exerted by parent over daily affairs of its subsidiary; (3) whether parent arranges financing for and capitalization of subsidiary; (4) whether separate books, tax returns, and financial statements are kept; (5) whether parent holds its subsidiary out as agent; and (6) the method of payment made to parent by subsidiary." *Id.* (citing *Gruca*, 19 F. Supp. 2d at 867). But "the existence of common officers or directors serving both corporations is not sufficient to confer jurisdiction over a nonresident parent

---

[2] As an aside, it is possible that the Supreme Court's decisions in *Daimler* and *Goodyear* undermined the agency theory of general jurisdiction. After all, it is called *personal* jurisdiction for a reason. The Supreme Court may have cast a shadow when it explicitly reserved the question whether an agency theory can give rise to general jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 135 (2014) ("[W]e need not pass judgment on invocation of an agency theory in the context of general jurisdiction . . . ."). A leading treatise suggests that the agency theory may, in fact, survive. *See* 4 Wright & Miller, Federal Practice and Procedure § 1069.4 ("*Daimler* did not, therefore, conclusively resolve the proper approach to when a subsidiary's contacts with the forum may be attributed to the parent company for purposes of personal jurisdiction."). Here, the parties do not call into question whether the agency theory remains good law. And this Court holds that Woods has not established personal jurisdiction under that theory anyway.

corporation." *Alderson*, 747 N.E.2d at 944 (citing *People v. Parsons Co.*, 461 N.E.2d 658, 664 (Ill. 1984)).

The bottom line is that "personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where . . . the parent does not exercise an *unusually high* degree of control over the subsidiary." *Central States*, 230 F.3d at 943 (emphasis added). So the critical question is whether there is an "unusually high" degree of control over the subsidiary. It's not just agency – it's something closer to "agency-plus." That's because the standard requires an *unusual* amount of control.

Woods asserts that the *Maunder* theory of personal jurisdiction should apply. As he sees things, "Cortland does not conduct any business separate and apart from Alter Domus, as it is a 'single integrated entity.'" *See* Pl.'s Mem. in Opp., at 6 (Dckt. No. 44).

He points to the Alter Domus website and makes three observations. First, the website identifies Cortland's business address as Alter Domus's Illinois office. Second, the website does not mention that Cortland has any business activity separate and apart from Alter Domus. Third, the website states that Cortland merged with "Alter Domus" in March 2018. *Id.*

The website doesn't get Woods very far. It does not establish that Alter Domus Participations had an unusually high degree of control over Cortland Capital. At best, the website shows a connection between Cortland Capital and the broader family of Alter Domus companies, not an unusual amount of control of Cortland Capital by Alter Domus Participations.

The fact that the website shows Cortland Capital's business address as the Illinois office of Alter Domus is not surprising, and it says nothing about the degree of control. Again, Cortland Capital is part of the group of affiliated entities doing business as Alter Domus. *See* Am. Cplt., at ¶ 7 (Dckt. No. 18). It makes sense that Alter Domus lists its business address in Illinois as the address of its member based in that state, Cortland Capital. The address says nothing about the degree of control that the Luxembourg company (Alter Domus Participations) exercises over the Illinois company (Cortland Capital).

In a similar vein, it makes no difference that the website does not draw bright lines between Cortland and the other Alter Domus entities. Again, Cortland is part of the group of affiliated entities doing business as Alter Domus. The website is a corporate family photo, of sorts. It doesn't reveal who is calling the shots in the family, let alone whether the degree of control is unusual.

Finally, the acquisition of Cortland Capital by Alter Domus U.S. does not move the needle. It says nothing about the degree of control that the Luxembourg company – Alter Domus Participations – exercises over Cortland Capital.

Ownership isn't enough. Otherwise, parents would be subject to jurisdiction everywhere their subsidiaries are subject to jurisdiction, which would stand the rule on its head. And in any event, Alter Domus Participations doesn't even directly own Cortland Capital (as far as this Court can tell, anyway).

9

That said, Woods does allege in the complaint that the Group Executive Board and Supervisory Board of Directors had the "power and authority to control the terms and conditions of Woods' employment, including with respect to compensation." *Id.* at ¶ 23. And Woods alleges that the Group Executive Board and Supervisory Board of Directors governed the entire Alter Domus group of affiliated entities. *Id.* at ¶ 7. Viewing these allegations in the light most favorable to Woods, he plausibly alleges that a set of directors acted as directors for Alter Domus Participations, Alter Domus U.S., and Cortland Capital. That means that Alter Domus Participations and Cortland Capital shared directors.

Sharing directors is one of the factors that courts in this district consider as evidence of a substantially high degree of control. *See Bray*, 2007 WL 7366260, at *6; *see also Gruca*, 19 F. Supp. 2d at 867. But "the existence of common officers or directors serving both corporations is not sufficient to confer jurisdiction over a nonresident parent corporation." *Alderson*, 747 N.E.2d at 944 (citing *Parsons Co.*, 461 N.E.2d at 664); *see also Integrated Bus. Info. Serv. (Proprietary) Ltd. v. Dun & Bradstreet Co.*, 714 F. Supp. 296, 300–01 (N.D. Ill. 1989) (finding that an "overlap of executives and directors" did not "approach the level of control found in *Maunder*").

That factor alone cannot establish an unusually high degree of control sufficient to establish personal jurisdiction over Alter Domus Participations. And Woods does not point to the existence of any other factors that would show an unusually high degree of control.

On the other side of the ledger, an affidavit from a director of Alter Domus Participations confirms that Alter Domus Participations does not control the employment decisions of Cortland Capital or Alter Domus U.S. *See* Decl. of Stéphane Bourg, at ¶ 6 (Dckt. No. 38-1). That statement cuts against a finding that Alter Domus Participations had an unusually high degree of control of Cortland Capital. It suggests that Alter Domus Participations exerts comparatively less control over the "daily affairs of its subsidiary." *See Bray*, 2007 WL 7366260, at *6.

Woods tries to analogize this case to *Haubner v. Abercrombie & Kent Int'l, Inc.*, 812 N.E.2d 704, 713 (Ill. App. Ct. 2004). In that case, the court noted that "[v]iewing the evidence as a whole, we believe that [the subsidiary] defendants were mere conduits through which [the parent] did business." *Id.* But he doesn't point to any specific facts in *Haubner* that would be analogous to this case, beyond the fact that *Haubner* also featured a parent company and subsidiary companies. *See* Pl.'s Mem. in Opp., at 6 (Dckt. No. 44). That's too slender of a reed to support personal jurisdiction.

At bottom, Woods has the burden to establish personal jurisdiction. He has not pointed to facts sufficient to meet that burden under the *Maunder* theory of general jurisdiction. No other theory of personal jurisdiction is on the table. So suing Alter Domus Participations in Illinois is off the table.

10

**Conclusion**

      Defendant Alter Domus Participations's motion to dismiss for lack of personal jurisdiction is granted. The amended complaint is dismissed without prejudice as to Defendant Alter Domus Participations. Defendant Alter Domus Participations's motion to dismiss for failure to state a claim is denied as moot.

Date: February 18, 2025

                                                Steven C. Seeger
                                                United States District Judge